## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| ANQOUS COSBY, | * | |
| | * | |
| Plaintiff and | * | |
| Counterclaim Defendant, | * | |
| | * | |
| v. | * | 1:22-CV-03449-ELR |
| | * | |
| STATE FARM FIRE AND | * | |
| CASUALTY COMPANY, | * | |
| | * | |
| Defendant and | * | |
| Counterclaim Plaintiff. | * | |
| | * | |

_____

**O R D E R**

_____

Several matters are pending before the Court.  The Court sets out its reasoning

and conclusions below.

## I.    Background[1]

This case stems from an insurance coverage dispute between Plaintiff and

Counterclaim Defendant Anqous Cosby and Defendant and Counterclaim Plaintiff

State Farm Fire and Casualty Company ("State Farm").  See generally Compl.

[Doc. 1-1 at 1–15]; State Farm's Answer and Counterclaim [Doc. 5]; Plaintiff's

---

[1] For reasons explained below, the Court does not herein decide summary judgment.  Accordingly, the facts and allegations recited in this order are based on the Court's review of materials that are part of or attached to the pleadings, central to the Parties' claims, and raise no dispute of authenticity.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

Answer to Defendant's Counterclaim [Doc. 7].  Plaintiff obtained an insurance policy from Defendant for his property located at 2973 Skyview Drive, Lithia Springs, Georgia 30122 (the "Property"), and that policy remained in effect between February 26, 2018, and February 26, 2019 (the "Policy").  On May 1, 2018, a fire occurred at the Property and Plaintiff subsequently filed a claim with Defendant for coverage pursuant to the Policy (the "Claim").  See Compl. ¶ 10.  Defendant paid Plaintiff approximately $366,000.00 for his Claim.  See Counterclaim ¶ 26; Pl.'s Answer ¶ 26.  However, Plaintiff asserted that this was an underpayment and that Defendant made misrepresentations to him during the handling of his Claim that led to his acceptance of this purportedly insufficient amount.  See Counterclaim ¶ 10; Pl.'s Answer ¶ 10.

Consequently, on May 2, 2019, Plaintiff sued State Farm and the law firm representing State Farm in the Superior Court of Douglas County, Georgia, and State Farm removed that action to this Court.  See Compl. and Notice of Removal, Cosby v. State Farm Fire and Casualty Company et al., Civil Action No. 1:19-CV-02589-ELR ("Cosby I"), ECF Nos. 1, 1-1.  Thereafter, on June 27, 2019, Plaintiff filed an amended complaint in Cosby I, by which he joined then-defense counsel, Mr. Thomas D. Martin, as a defendant to that action.  See Am. Compl., Cosby I, ECF No. 7.  In Cosby I, State Farm, the law firm, and Attorney Martin moved for judgment on the pleadings, and Plaintiff voluntarily dismissed the case without

prejudice on August 19, 2019, before that motion could be adjudicated.  See Cosby I, ECF Nos. 16, 21, 23.

After Plaintiff voluntarily dismissed Cosby I but before the instant action commenced, Plaintiff and Defendant engaged in extensive settlement negotiations, including mediation, in an attempt to resolve Plaintiff's claim that he was underpaid pursuant to the Policy for the loss caused to the Property by the fire.  See, e.g., Counterclaim ¶¶ 12–13; Pl.'s Answer ¶¶ 12–13; [Docs. 5-2, 5-3, 5-4].  Beginning in January 2022, Plaintiff retained counsel, Mr. KaRon Grimes, to represent him in these negotiations (although Attorney Grimes has never represented Plaintiff in this action and Plaintiff is proceeding *pro se*).  See, e.g., Counterclaim ¶ 15; Pl.'s Answer ¶ 15; [Docs. 5-2, 5-3, 5-4].

During the Parties' negotiations, one "sticking point" was the "inflation adjustment feature of the" Policy.  Counterclaim ¶ 16 (internal quotation marks omitted); Pl.'s Answer ¶ 16.  Plaintiff (through his then-counsel) communicated that he "wanted [Defendant] to use an inflation adjustment date close[] to the present— i.e., a date close [to] the period of the negotiations in late 2021 or early 2022[,]" but Defendant (through its counsel) communicated it would only agree to apply "the inflation index in effect on the date of [the] loss," May 1, 2018, and it represented that this inflation index was 239.5.  See Counterclaim ¶ 18; Pl.'s Answer ¶ 18; [Doc. 5-2 at 2].  On March 2, 2022, defense counsel emailed Plaintiff's then-counsel to

"offer[] $267,577.11 for a full and final settlement of [Plaintiff's] claims" and stated that Defendant "would require a general release of all claims and other customary settlement terms, to be memorialized in a formal settlement agreement." [Doc. 5-2 at 2] (internal quotation marks omitted).   On March 21, 2022, Plaintiff's then-counsel sent a draft of a proposed settlement agreement to defense counsel that sought to delete a phrase—originally proposed by Defendant—that would have released any claims Plaintiff may have for "fraud in the inducement" regarding the making of the settlement agreement.  See Counterclaim ¶ 23; Pl.'s Answer ¶ 23; [Doc. 5-4 at 2].  In his March 21, 2022 email, Plaintiff's then-counsel stated that Plaintiff was "ready to sign the deal" with that language stricken, that Plaintiff "added" a provision "regarding inflation," and that Plaintiff "is willing to forgo certain coverages, dispute inflation, and rely on State Farm's representation regarding inflation." [See id. at 2, 4, 6].  The provision "regarding inflation" that Plaintiff proposed in his March 21, 2022 draft of the proposed settlement agreement stated: "Cosby Releasors makes this agreement subject to State Farm's representation that the correct application of the inflation index is on the date of loss and is 239.5 and is consistent with the policy terms and applicable laws." [Id. at 7].  It is undisputed that Defendant rejected Plaintiff's proposals.  See Pl.'s Answer ¶ 24(b); Counterclaim ¶ 24.  Instead, Defendant provided its draft version of the settlement agreement to Plaintiff's then-counsel, which (1) did not include Plaintiff's

foregoing proposed provision "regarding inflation"; (2) included a covenant not to sue; (3) included language releasing any claims Plaintiff might have against Defendant, its employees, current and former attorneys, and others, for, among other things, "fraud in the inducement of" the proposed settlement; and (4) included a merger clause. [See Doc. 5-5 at 3–7]. On March 22, 2022, Plaintiff's then-counsel emailed defense counsel a copy of the final Settlement Agreement, signed by Plaintiff earlier that same day. [See generally Docs. 1-1 at 63–67; 5-5 at 2–7]. The executed Settlement Agreement contains Defendant's proposed covenant not to sue, release of claims, and merger clause, among other things, in exchange for a payment to Plaintiff in the amount of $267,511.00. [See generally Docs. 1-1 at 63–67; 5-5 at 2–7]; Counterclaim ¶¶ 27–29; Pl.'s Answer ¶¶ 27–29. Thus, Defendant paid Plaintiff the agreed-upon sum of $267,511.00 pursuant to the Settlement Agreement in addition to the approximately $366,000.00 Defendant had previously paid Plaintiff for his Claim. See Pl.'s Answer ¶¶ 25–26; Counterclaim ¶¶ 25–26. There is no dispute that Plaintiff received and has retained those funds in full.

## II.     Procedural History[2]

On July 15, 2022, Plaintiff initiated the present action—his second suit against Defendant seeking to recover additional funds pursuant to the Policy—in the Superior Court of Douglas County, Georgia.  See Compl.  Plaintiff alleges claims against Defendant for (1) "fraud by procurement[] and inducement of a settlement," (2) common law fraud, (3) statutory bad faith, (4) breach of contract, and (5) "violation of RICO and for damages."  See id.  Defendant brings a single counterclaim against Plaintiff for breach of contract based on the Settlement Agreement.  See Counterclaim.  The Court entered its Scheduling Order on November 8, 2022.  [Doc. 13].  By an Order dated February 28, 2023, the Court granted a consent motion by the Parties for an extension of the discovery period through April 14, 2023.  [Doc. 18].

The Parties each timely moved for full or partial summary judgment on May 15, 2023.  [Docs. 36, 37].  Defendant moves for full summary judgment with respect to all of Plaintiff's claims and as to "liability on [Defendant's] [c]ounterclaim."  [See Doc. 36-2 at 1].  Plaintiff responded in opposition to Defendant's summary judgment motion on June 6, 2023.  [Doc. 46].  Two (2) days later, on June 8, 2023, Plaintiff

---

[2] For additional procedural history not recited herein, the Court refers to its Orders dated October 17, 2022; March 16, 2023; April 7, 2023; and July 18, 2023.  [See Docs. 11, 21, 25, 59].  Additionally, The Court has reproduced the titles of the Parties' filings herein exactly as they appear in the Parties' original filings with limited changes for clarity indicated in brackets. Any errors or formatting anomalies in these titles are found in the originals.

filed an "Amended Response to Defendant's Motion for Summary Judgment and Motion to Disqualify Attorney Thomas Curvin." [Doc. 47]. On June 12, 2023, Plaintiff submitted a "Second Amended Response to Defendant's Motion for Summary Judgment and [Second] Motion to Disqualify Attorney Thomas Curvin." [Doc. 50]. As for Plaintiff, he moves for partial summary judgment on his own claims, but not Defendant's counterclaim.   [See Doc. 37 at 8–7, 11–19].[3] Subsequently, on May 17, 2023, Plaintiff filed an untimely "Amended Motion for Partial Summary Judgment." [See Doc. 42]; see also FED. R. CIV. P. 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."); id. 6(a)(1)(C).   Even though Plaintiff's amended partial summary judgment motion was untimely, Defendant responded in opposition to that amended motion instead of Plaintiff's original partial summary judgment motion. [See Doc. 49]. Plaintiff replied in support of his amended partial summary judgment motion on June 26, 2023. [Doc. 53]. On July 17, 2023, Plaintiff filed an updated reply brief. [Doc. 60]. Plaintiff continued to make several filings in support of his amended motion as late as July 19, 2023. [See Docs. 52, 56, 61]; see also LR 56.1(B)(1).

---

[3] The Court's citations in this order refer to the page numbers automatically generated by the Court's electronic filing system that appear at the top of each page of every document.

Meanwhile, the undersigned scheduled a hearing on Plaintiff's motions to disqualify (along with several other motions filed by Plaintiff related to discovery disputes) and Ordered Plaintiff "to cease filing further duplicative motions on the docket." [See Doc. 51]. Both Plaintiff and defense counsel appeared at the July 13, 2023 hearing and presented oral argument. Following that hearing, by an Order dated July 18, 2023, the Court granted Plaintiff leave to file a motion to compel discovery, even though both Parties had failed to comply with the undersigned's Instructions for Civil Cases regarding discovery disputes.[4]  [Doc. 59].

Plaintiff timely filed his motion to compel on August 8, 2023, which he titles as a "Motion to Compel State Farm's Production of Documents, Interrogatories, Provide Witnesses for Depositions, and Full Disclosure Regarding Redacted and So-Called Privileged Documents and Emails." [Doc. 65]. Defendant opposes that motion. [Doc. 70]. In combination with his reply brief in support of his motion to compel, Plaintiff moves to strike Defendant's response brief in opposition to the same. [See Doc. 72].

There are also several other motions pending before the Court at present. On July 19, 2023, Plaintiff submitted a "Motion to Strike Defendant's Frivolous

---

[4] Additionally, as memorialized in its July 18, 2023 Order, the Court accepted Plaintiff's "second amended response" at Docket Entry 50 as his operative response brief in opposition to Defendant's motion for summary judgment (but denied Plaintiff's motions to disqualify defense counsel). [See Docs. 47, 50, 58, 59]. Defendant replied in support of its summary judgment motion on June 26, 2023. [Doc. 53].

Defenses [and for] Permission to File a Motion for Sanctions Under Rule 11 and for a Hearing," which Defendant opposes.  [Docs. 62, 64, 67].  On July 28, 2023, Plaintiff filed a "Motion to Certify for Interlocutory Appeal the Court's July 18, 2023 Order and Stay Proceedings Below," which Defendant opposes.  [Docs. 63, 66, 71]. On January 11, 2024, Plaintiff submitted two (2) motions, one labeled as a "Motion to Recuse Judge Eleanor Ross Due to the Defendant and Their Attorneys' Deception and Fraud Upon the Court which has Defiled the Court's Impartiality" [Doc. 73] and one labeled as a "Motion to Investigate Fraud on this Court Under Rule 60 and for Violations of Rule 11, Rule 26, and Rule 37 to Set Aside Its Rulings and for a Hearing Under Rules of Evidence." [Doc. 74].  Defendant filed a combined response in opposition to both of those motions.  [Doc. 75].

Given the plethora of motions before it, several of which concern discovery-related issues which may impact summary judgment, the Court begins by addressing those motions.  The Court then proceeds to address the Parties' cross-motions for summary judgment and next steps in this case.

## III.   Plaintiff's Motions

The Court addresses Plaintiff's motion to strike and for Rule 11 sanctions, his motion for interlocutory appeal and a corresponding stay, motion for recusal and to "investigate fraud," and his motion to compel in turn below.  [See Docs. 62, 63, 65, 73, 74].

## A.      Rule 12(f) Motion to Strike and for Rule 11 Sanctions [Doc. 62]

First, the Court denies Plaintiff's "Motion to Strike Defendant's Frivolous Defenses [and for] Permission to File a Motion for Sanctions Under Rule 11 and for a Hearing." [Doc. 62].  In that motion, Plaintiff urges the Court to strike various portions of Defendant's reply brief in support of its motion for summary judgment and Defendant's response brief in opposition to Plaintiff's motion for partial summary judgment.  [See, e.g., id. at 3–4, 8, 11].  In support, Plaintiff both (1) claims that Defendant's arguments in those briefs are made "in bath faith, frivolous, for the [purpose of] delay . . . in violation of Rule 12(f) and Rule 11" and (2) disputes Defendant's arguments on the merits for the same reasons Plaintiff sets out in his own summary judgment briefs.  [See id. at 11–12].  However:

> Federal Rule of Civil Procedure 12(f), which delineates the general use of a motion to strike, provides that, "Upon motion made by a party . . . the court may order stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (Emphasis added.)  The terms of the rule make clear that "[o]nly material included in a 'pleading' may be subject of a motion to strike. . . . Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore, et al., Moore's Federal Practice § 12.37 (3d ed. 1999).  Therefore, as an initial matter, the motion to strike must be denied as to all non-pleadings . . . . See FED. R. CIV. P. 7(a) (a "pleading" is "a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.").

<u>Lowery v. Hoffman</u>, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (emphasis and alteration in original).

Because Plaintiff's Rule 12(f) motion to strike seeks to strike portions of Defendant's briefs, which are not pleadings pursuant to Rule 7(a), it is due to be denied as a matter of law.  <u>See id.</u>; <u>see also</u> FED. R. CIV. P. 12(f); <u>id.</u> 7(a). Additionally, Plaintiff does not mention Rule 11 sanctions in his instant motion other than in the title of that document and in making passing references to that Rule.  [<u>See generally</u> Doc. 62] (citing FED. R. CIV. P. 11).  And regardless, Plaintiff's motion fails to meet the requirements of Rule 11(c)(2).[5]  <u>See</u> FED. R. CIV. P. 11(c)(2). Therefore, the Court denies Plaintiff's "Motion to Strike Defendant's Frivolous Defenses [and for] Permission to File a Motion for Sanctions Under Rule 11 and for a Hearing" in its entirety.  [Doc. 62].

### B.    Motion for Interlocutory Appeal and for a Stay [Doc. 63]

Second, the Court denies Plaintiff's "Motion to Certify for Interlocutory Appeal the Court's July 18, 2023 Order and Stay Proceedings Below."  [Doc. 63]. In that motion, Plaintiff asks the Court to certify three (3) rulings from its July 18, 2023 Order for interlocutory appeal, specifically, those that: (1) denied Plaintiff's

---

[5] The Court further observes that although non-monetary sanctions are available pursuant to Rule 11, the most common Rule 11 sanction is for attorney's fees, and the Eleventh Circuit has held that "[b]ecause a party proceeding *pro se* cannot have incurred attorney's fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a [Rule 11] sanction."  <u>Massengale v. Ray</u>, 267 F.3d 1298, 1302–03 (11th Cir. 2001).

motion for reconsideration regarding the Court's April 7, 2023 ruling denying his motion to amend his Complaint; (2) denied Plaintiff's motion to amend his Answer to Defendant's Counterclaim; and (3) denied Plaintiff's second motion to disqualify Mr. Curvin as defense counsel.  [See Docs. 15; 25; 31; 32; 50; 59 at 2; 63 at 1; 71]. In support, Plaintiff claims that he will be irreparably harmed if he must await the final outcome of this litigation to appeal these rulings because his "case surrounds the conspiracy and [r]acketeering[,] i.e., RICO violations between multiple individuals . . . to commit fraud[,]" and that "without being allowed to amend [his] [C]omplaint[,] the Plaintiff will lose the ability to prove the ultimate conspiracy of [Defendant] to defraud its policyholder[.]"[6]  [See Doc. 63 at 3] (internal citations omitted).  Additionally, although the instant motion is not styled as one seeking reconsideration, Plaintiff therein repeats his previous arguments that he should be allowed to amend his Complaint and supplement his Answer to Defendant's

---

[6] Although Plaintiff contends that the Court "gave no citations to the authority to deny his motion for leave to amend[,]" Plaintiff's own brief belies this assertion, as Plaintiff therein directly argues against the Court's April 7, 2023 finding that his proposed amended complaint would "result in undue delay or undue prejudice" such that "even Rule 15(a)'s liberal standard is not broad enough to permit [Plaintiff's] proposed amendment"—which was only one of three (3) reasons the Court enumerated for its decision to deny his motion to amend.  [See Docs. 25 at 9; 63 at 4–5].  Plaintiff already sought reconsideration of the Court's April 7, 2023 Order denying his motion to amend. [See Doc. 32] (Plaintiff's "Motion for a New Trial and/or to Vacate, Alter, and Set Aside this Court's April 7, 2023 order Pursuant to FED. R. CIV. P. 59(e), 60(b), and 83").  The Court orally denied that motion for reconsideration during the July 13, 2023 hearing—which Plaintiff attended—and memorialized its ruling in its July 18, 2023 Order.  [Docs. 32, 58, 59].  Thus, Plaintiff's instant contention that he never received detailed reasoning or citations to authority as to why the Court denied his motion to amend is without merit.  [Compare Doc. 63 at 4–5, with Doc. 25].

Counterclaim and reiterates that he believes Mr. Curvin should be disqualified as defense counsel.  [See generally Docs. 15, 31, 32, 47, 50, 63].

A district court may certify an interlocutory ruling for appeal only where that ruling (1) "involves a controlling question of law[,]" (2) "as to which there is substantial ground for difference of opinion[,]" (3) "*and* that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"[7] See 28 U.S.C. § 1292(b) (emphasis added); accord Drummond Co., Inc. v. Conrad & Scherer, LLP, 885 F.3d 1324, 1336 (11th Cir. 2018) (providing that "[i]n general," the Eleventh Circuit only exercises its discretion to consider an interlocutory appeal "when (1) the appeal presents a pure question of law, (2) the question is controlling of at least a substantial part of the case, (3) the district court identifies the question in its order, (4) there are substantial grounds for differences of opinion on the question, and (5) resolution of the question may reduce the amount of litigation necessary on remand" (internal citation omitted)).  "However, this process should be used sparingly."  Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs, 952 F. Supp. 2d 1360, 1362 (N.D. Ga. 2013).  "The proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule[] and . . . threatened by too expansive

---

[7] Additionally, interlocutory appeal does not automatically stay the underlying proceedings unless the district court or the court of appeals so orders.  See 28 U.S.C. § 1292(b).

use of the § 1292(b) exception to it." <u>McFarlin v. Conseco Servs., LLC</u>, 381 F.3d 1251, 1259 (11th Cir. 2004). To that end, the Eleventh Circuit has echoed the report of the Judicial Conference of the United States Courts to Congress regarding the limited purpose of 28 U.S.C. § 1292(b):

> The appeal from interlocutory orders . . . should and will be used only in *exceptional* cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided . . . . *It is not thought* that district judges would grant the certificate in ordinary litigation which could otherwise be promptly disposed of or *that mere question as to the correctness of the ruling would prompt the granting of the certificate*. The right of appeal given by [28 U.S.C. § 1292(b)] is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.

<u>Id.</u> at 1256 (cleaned up and emphasis added). Even where a district court certifies an order for immediate interlocutory appeal, the corresponding appellate court is not obligated to take up that appeal and may decline to do so in its discretion. <u>See</u> 28 U.S.C. § 1292(b); <u>see also</u> <u>Drummond Co.</u>, 885 F.3d at 1336 (explaining that "even if all of these factors are present," the appellate court "still ha[s] discretion to disallow the appeal").

Applying the three (3)-part standard set forth by the applicable statute, the Court finds that none of the rulings Plaintiff challenges meet the requirements for immediate appeal (specifically, those rulings denying Plaintiff leave to amend his

Complaint and Answer to Defendant's Counterclaim as well as in denying his second motion to disqualify defense counsel).  See 28 U.S.C. § 1292(b); [see also Doc. 63].  First, there is no question of controlling law implicated by the rulings Plaintiff challenges.   "The term 'question of law' does not encompass 'the application of settled law to fact' or 'any question the decision of which requires rooting through the record.'"  Ga. State Conf. of NAACP, 952 F. Supp. 2d at 1362 (cleaned up) (quoting McFarlin, 381 F.3d  at 1258).  "Instead, the types of questions to which § 1292(b) is directed are those that 'might be called questions of pure law, matters the court of appeals 'can decide quickly and cleanly without having to study the record.'"  See id. (cleaned up) (quoting McFarlin, 381 F.3d at 1256).  All three (3) of the rulings Plaintiff challenges involved applying well-settled legal standards to fact-intensive inquiries and required extensive review of Plaintiff's many filings to even reach the appropriate motion, much less resolve them.  [See Docs. 15, 31, 32, 47, 50, 63].  The Eleventh Circuit has deemed interlocutory appeal of issues that require "fact-specific inquiry"—such as those in the rulings Plaintiff now challenges—to be improper based on the reasoning that to allow such interlocutory appeals "would require the [appellate] court to apply law to the particular facts of the case and thus to take a deep dive into this case's voluminous record" and "[t]he purpose of § 1292(b) is not to provide interlocutory appellate review of such fact-

driven issues." See Drummond Co., 885 F.3d at 1337 (citing McFarlin, 381 F.3d at 1262).

Second, Plaintiff identifies no legitimate "substantial ground for difference of opinion" with regard to the issues the Court decided in the challenged rulings. See 28 U.S.C. § 1292(b); [Doc. 36]. "The requirement that there be substantial ground for difference of opinion is satisfied when (1) the issue is difficult and of first impression, (2) a difference of opinion as to the issue exists within the controlling circuit, or (3) the circuits are split on the issue." Ga. State Conf. of NAACP, 952 F. Supp. 2d at 1362 (citing United States ex rel. Powell v. Am. InterContinental Univ., Inc., 756 F.Supp.2d 1374, 1378–79 (N.D. Ga. 2010)). Even if there exists a "question . . . of first impression," this reason, "standing alone, is insufficient" to warrant interlocutory appeal. Id. (citing In re Flor, 79 F.3d 281, 284 (2d Cir. 1996)). "Instead, the district court has a duty 'to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute.'" Id. (quoting Max Daetwyler Corp. v. Meyer, 575 F. Supp. 280, 283 (E.D. Pa. 1983)). Plaintiff presents no basis upon which the Court could feasibly find that the challenged rulings implicate issues of first impression, or that there is conflicting case law in the Eleventh Circuit on these issues, or that any Circuit split exists as to the issues decided by those rulings. See id.; [see also Doc. 36]. Indeed, Plaintiff "fails to point

to any decision by any court" that supports his position.  See Ga. State Conf. of NAACP, 952 F. Supp. 2d at 1365.

Finally, the Court finds that Plaintiff fails to satisfy the third factor for certification of interlocutory appeal, that is, whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  See 28 U.S.C. § 1292(b).  If the resolution of an immediate appeal would materially advance the ultimate termination of the litigation, this means it "would serve to avoid a trial or otherwise substantially shorten the litigation[,]" thereby lessening the time, effort, and expense the parties must expend.  See McFarlin, 381 F.3d at 1259 (collecting cases).  If this Court were to grant Plaintiff's instant motion, the opposite would occur, and this litigation would be unnecessarily delayed and protracted. Thus, Plaintiff's motion fails all three (3) prongs of the standard for certifying interlocutory appeal.  See 28 U.S.C. § 1292(b).

In essence, Plaintiff "mere[ly] question[s] the correctness of the ruling[s]" the Court made in denying him leave to amend his Complaint and Answer to Defendant's Counterclaim as well as in denying his second motion to disqualify defense counsel.  See McFarlin, 381 F.3d at 1256 (internal quotation omitted); [see also Doc. 63].  This disagreement does not suffice to create a proper question for interlocutory appeal.  See McFarlin, 381 F.3d at 1259 ("In determining whether to grant review, we should ask if there is substantial dispute about the correctness of

any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed.  The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law.  And the answer to that question must substantially reduce the amount of litigation left in the case. . . .  Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy.").  Accordingly, the Court denies Plaintiff's motion for interlocutory appeal and for a stay.  [Doc. 63].

### C.      Motion for Recusal and Motion to Investigate Fraud [Docs. 73, 74]

Third, the Court denies Plaintiff's "Motion to Recuse Judge Eleanor Ross Due to the Defendant and Their Attorneys' Deception and Fraud Upon the Court which has Defiled the Court's Impartiality" [Doc. 73] and "Motion to Investigate Fraud on This Court Under Rule 60 and for Violations of Rule 11, Rule 26, and Rule 37 to Set Aside its Rulings and for a Hearing Under Rules of Evidence."  [Doc. 74].  In those motions, Plaintiff launches a wide-scattered barrage of arguments.  [See generally Docs. 73, 74].  Among other things, Plaintiff contends that the Court should consider documents from insurance policies *other than* the Policy Plaintiff purchased from Defendant as "evidence" for Plaintiff's own claims; that the Court prevented Plaintiff from "reveal[ing] the Defendant's deception" because it did not

allow him to play audio from his laptop during the July 13, 2023 hearing;[8] that Federal Rule of Evidence 201(e) requires "hearing and investigation" when "judicial notice is requested" (which Plaintiff appears to connect to his allegations of fraud); that defense counsel "knowingly lied" to the Court and sanctions are warranted; and, strangely, an argument challenging this Court's Article III jurisdiction.   [See generally Docs. 73, 74] (emphasis and all caps omitted).   Defendant responds in opposition that Plaintiff's instant motions merely "rehash[] many earlier complaints and [are] full of false allegations, personal attacks, and invective[,]" while "re-argu[ing] positions that have been rejected, including on a motion for reconsideration." [Doc. 75 at 2].

Indeed, Plaintiff's above arguments strain the Court's comprehension— whether due to their deficient substance, form, or a simple lack of relevance to *this* case (which itself stems from Plaintiff's Claim pursuant to his own Policy, not policies issued at other times to other people for other property).[9]  Upon review and consideration, the Court finds that all of Plaintiff's above arguments lack merit and

---

[8] As the Court stated in its June 12, 2023 Order scheduling the July 13, 2023 hearing, it would "only hear oral argument from counsel and Mr. Cosby" during that hearing.  [Doc. 51].  The Court respectfully but firmly reiterates that Plaintiff's misapprehension that the July 13, 2023 hearing would be an evidentiary hearing is just that—his own misunderstanding.  [See Doc. 73 at 10].

[9] Independently, the Court can decline to consider Plaintiff's above arguments because they do not comport with the formatting requirements of this district as set forth in the Local Rules (which the Court has specifically exhorted Plaintiff to follow).  See LR 7.1(F), NDGa.

are frivolous, and as such, declines to discuss them further.[10]   The Court also declines

Plaintiff's request for a hearing on those issues.   See LR 7.1(E), NDGa. ("Motions

will be decided by the court without oral hearing, unless a hearing is ordered by the

court.").

In support of his motion for the undersigned to recuse herself, Plaintiff claims

that "Defendant[] and its Atty.'s" "mere words" have "blinded" the Court and caused

it to become biased—all because the Court has not resolved this case in his favor.

[See Doc. 73 at 5] (all caps omitted and abbreviation in original).   In the same motion

for recusal, Plaintiff "acknowledges that this Court is capable of presiding over and

adjudicating this case" but repeats his belief that "this honorable Court has been

under the guise and lies of Defendant and their Attorneys."   [Id. at 15–16].   As

relevant here,

> Recusal is governed by 28 U.S.C. §§ 144 and 455.   United States v.
> Berger, 375 F.3d 1223, 1227 (11th Cir. 2004).   Under § 144, a judge
> must recuse herself when a party to a district court proceeding files a
> timely and sufficient affidavit that the judge before whom the matter is
> pending has a personal bias or prejudice either against him or in favor
> of any adverse party. 28 U.S.C. § 144.   To warrant recusal under § 144,
> the moving party must, among other things, allege facts that would

---

[10] To the extent Plaintiff intends his motions to be ones seeking reconsideration, he fails to meet
the applicable legal standard.   [Compare Docs. 73, 74], with Pediatric Med. Devices, Inc. v. Ind.
Mills & Mfg., Inc., 961 F. Supp. 2d 1241, 1243 (N.D. Ga. 2013) (holding that motions for
reconsideration should not be used "as a vehicle to present new arguments or evidence that should
have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test
whether the Court will change its mind"), and Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258–59
(N.D. Ga. 2003) (explaining that motions for reconsideration are only appropriate where there is
(1) newly discovered evidence, (2) an intervening development or change in controlling law, or
(3) a need to correct a clear error of law or fact).

convince a reasonable person that bias actually exists.  United States v. Serrano, 607 F.2d 1145, 1150 (5th Cir. 1979).

Section 455 designates two primary reasons that a judge must recuse herself.  United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003). First, under § 455(a), a judge "shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  The standard of review for whether a judge should have recused herself under § 455(a) "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Patti, 337 F.3d at 1321 (quotation marks omitted).

Second, under § 455(b)(1), a judge shall also disqualify herself if "[s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).  The Supreme Court, however, has stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).  Indeed, bias "must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties." Berger, 375 F.3d at 1227 (quotation marks omitted).

Postell v. City of Cordele, No. 22-13636, 2023 WL 4364503, at *3 (11th Cir. July 6, 2023) (internal footnote omitted).

The specific basis for recusal Plaintiff proffers in his instant motion is 28 U.S.C. § 455(a).  [Doc. 73 at 1].  As set forth above, Section 455(a) would require some support for the proposition that "an objective, disinterested, lay observer fully informed of the facts . . . would entertain a significant doubt about the judge's impartiality." Patti, 337 F.3d at 1321 (internal quotation marks omitted).  And "grievances against a judge's rulings and routine case administration efforts [a]re

not valid grounds for recusal[.]"  Postell, 2023 WL 4364503, at *2; accord In re Evergreen Sec., Ltd., 570 F.3d 1257, 1274 (11th Cir. 2009) ("Challenges to adverse rulings are generally grounds for appeal, not recusal.").  The undersigned harbors no personal bias against Plaintiff, or in favor of Defendant, and Plaintiff provides no evidence of any such purported bias.  See Postell, 2023 WL 4364503, at *2. Accordingly, the Court denies both of Plaintiff's instant motions.  [Docs. 73, 74].

### D.    Motion to Compel Discovery [Doc. 65]

Next, the Court addresses Plaintiff's "Motion to Compel State Farm's Production of Documents, Interrogatories, Provide Witnesses for Depositions, and Full Disclosure Regarding Redacted and So-Called Privileged Documents and Emails." [Doc. 65].  As noted, Plaintiff filed his motion to compel with the Court's permission, as set forth in its July 18, 2023 Order.  [See Doc. 59 at 3] (instructing that "Mr. Cosby should clearly set forth the discovery he seeks and the legal and factual basis ungirding each request in his motion" to compel).  Defendant filed a response in opposition to Plaintiff's motion to compel, to which Plaintiff filed a

combined reply brief and "motion to strike" Defendant's response.[11]  [See Docs. 70, 72].

As the factual basis for his motion to compel, Plaintiff asserts that the discovery he seeks is "owed to" him because if Defendant had "provided the correct inflation information or disclosed the correct procedure to calculate inflation, and all coverages[,]" then Plaintiff would be able to demonstrate the "additional amount" that Defendant purportedly owes him.  [See Doc. 65 at 6].  Because Plaintiff seeks to compel several types of discovery from Defendant, the Court addresses each category in turn.[12]

1.   Redacted entries and emails from Defendant's Claim File

On March 26, 2023, Defendant produced to Plaintiff what appears to be a partially redacted copy of its Claim File, which contains various log entries by

---

[11] The Court denies Plaintiff's purported motion to strike Defendant's response brief in opposition to his motion to compel.  [Doc. 72].  Motions and response briefs are not "pleadings" subject to a motion to strike pursuant to Federal Rules of Civil Procedure 7(a) and 12(f).  See FED. R. CIV. P. 7(a); id. 12(f).  Independently, Plaintiff's belief that Defendant's right to oppose his motion to compel "has been forfeited" by virtue of the July 13, 2023 hearing in this case is without merit.  [See Doc. 72 at 2].  To clarify, Defendant represented during the June 13, 2023 hearing that it would not oppose Plaintiff's request to file a motion to compel despite the Parties' mutual non-compliance with the undersigned's Instructions for Civil Cases requiring a Joint/Consolidated Discovery Statement prior to the filing of any motions to compel or quash.  This is not the same as Defendant promising it would not oppose Plaintiff's specific requests to compel certain discovery.

[12] Puzzlingly, Plaintiff also seems to make arguments regarding contract recission in his motion to compel, although a motion to compel is not an appropriate vehicle for Plaintiff to make substantive arguments about the merits of any claim or to respond to the allegations in Defendant's counterclaim.  [See, e.g., Doc. 65 at 7] ("That being said there's no way EQUITY OR JUSTICE would require the Plaintiff to repay the Defendant ANYTHING." (citing Atlanta Life Ins. Co. v. Walker, 184 S.E. 776, 779 (Ga. Ct. App. 1936)) (capitalization in original).  The Court does not consider those arguments because they were not properly raised.

Defendant's employees pertaining to Plaintiff's Claim.  [See Docs. 65 at 26–27, 31, 33–34; 70 at 8].  Plaintiff takes issue with three (3) of the log entries in the Claim File, each of which is partially redacted.[13]  [See Doc. 65 at 1–10].  Defendant asserts that each of those three (3) log entries are protected by attorney-client privilege.[14]  [See Doc. 70 at 7–8].  Although Plaintiff does not dispute that the log entries are the proper subjects of attorney-client privilege, he instead contends that the Court should apply the crime-fraud exception to pierce that privilege.  [See Doc. 72 at 6–7].

In cases where the district court's subject matter jurisdiction rests on diversity of citizenship, "state law governs the privileged nature of materials[] sought in discovery."[15]  Lazar v. Mauney, 192 F.R.D. 324, 327–28 (N.D. Ga. 2000).  Thus, the Court looks to Georgia attorney-client privilege law, which provides that "attorney-client privilege protects admissions and communications between the attorney, in his or her representative capacity, and the client, made for the purpose of securing legal advice or assistance."  Id. at 328.  Therefore, attorney-client

---

[13] Although Plaintiff identifies the Claim File documents he seeks to obtain in unredacted form as Exhibits A, B, and C to his motion to compel, the Court's review leads it to believe that Plaintiff meant to refer to his Exhibits A, C, and D.  [See Doc. 65 at 8, 25–34].  There are no redactions in Plaintiff's Exhibit B, which appears to be an "Appraisal Award" signed by two (2) appraisers on October 14, 2021.  [See id. at 11, 29].

[14] The Court observes that Defendant fails to articulate any of the applicable legal standards in its response to Plaintiff's motion to compel, save for a single passing reference to Federal Rule of Civil Procedure 26(b).  [See Doc. 70 at 12].  The Court cautions Defendant that it should not be so cavalier in presenting its arguments to the Court, regardless of whether Defendant views Plaintiff's position as meritless.  Nevertheless, because the Court "ha[s] a strong preference for deciding cases on the merits . . . whenever reasonably possible[,]" it applies the relevant legal standards to the issues at bar.  See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014).

[15] The instant matter is before the Court based on diversity jurisdiction.  See Notice of Removal.

privilege "bars revelation, discovery, and testimony of [attorney-client privileged materials by] a lawyer except when waived by the client or in very limited circumstances." Id. (alteration in original) (quoting NationsBank, N.A. v. Southtrust Bank of Ga., N.A., 487 S.E.2d 701, 708 (Ga. Ct. App. 1997)).  One such "very limited circumstance[]" is the crime-fraud exception.   See id.   "To determine whether the crime-fraud exception applies, we employ a two-part test[.]"  Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1416 (11th Cir. 1994) (citing In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226 (11th Cir. 1987)), opinion modified on reh'g, 30 F.3d 1347 (11th Cir. 1994).

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when [it] sought the advice of counsel, that [it] was planning such conduct when [it] sought the advice of counsel, or that [it] committed a crime or fraud subsequent to receiving the benefit of counsel's advice.  Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

See id. (quoting In re Grand Jury Investigation (Schroeder), 842 F.2d at 1226).  If there is a genuine question of whether the crime-fraud exception might apply, the Supreme Court has instructed that the appropriate course of action is for the district court to require the "parties who seek to avoid disclosure of documents to make the documents available [to the court] for in camera inspection[.]"  United States v. Zolin, 491 U.S. 554, 568–69 (1989) (collecting cases).

However, a district court need not undertake *in camera* inspection in every case where a party argues the crime-fraud exception, and, indeed, the court need not apply its discretion to do so absent a supported request from the party seeking disclosure.  See id. at 570, 572 (explaining that a district court "may" conduct *in camera* review "in its discretion" if "the party seeking *in camera* review" makes the "threshold showing that such review is appropriate").  Specifically, the Supreme Court instructs that

> [b]efore engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person[]" that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

Id. at 572 (quoting Caldwell v. District Ct., 644 P.2d 26, 33 (Colo. 1982)).  "There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."  Id. at 571.

In the matter at hand, while Plaintiff argues the crime-fraud exception should apply to the Claim File log entries in dispute, he does not request that the Court conduct *in camera* review to determine their discoverability.[16]   [Doc. 72].   The

---

[16] Plaintiff does not dispute, and the Court agrees, that the three (3) redacted Claim File log entries contain information subject to attorney-client privilege.  [See generally Docs. 65, 72].

entirety of Plaintiff's argument concerning the crime-fraud exception (which, at any rate, was only articulated for the first time in his reply brief) is as follows:

> Plaintiff has presented applicable case law as well as several motions to disqualify attorney Curvin and to allow him to be made part of this legal suit as a Defendant because of the obvious fraudulent continued misrepresentations before to the Plaintiff and during this action to the Court.  Seeing that this case is [sic] reeks of fraud there's no way attorney-client privilege can attach or prevent the production of all requested [d]iscovery information.

[Id. at 6].  Thereafter, Plaintiff merely repeats his assertion that defense counsel should be joined as a Defendant in this case.  [Id. at 7].

Based on the foregoing, the Court finds that Plaintiff fails to provide any non-conclusory reason this Court should compel Defendant to produce any of the three (3) partially redacted log entries from the Claim File—or even conduct *in camera* review of the same.

This same reasoning applies to what appears to be—so far as the Court discerns—a list of thirty-three (33) "emails from" Defendant's Claim File that have only been produced to Plaintiff in partially redacted form (as part of the entire Claim File that Defendant produced to Plaintiff).  [See id. at 20, 23].  Near the conclusion of his motion, Plaintiff states that he seeks to compel "[t]he original emails from [Defendant] to their attorneys not the [Defendant's] [Claim File], which as the Court can see makes everything so confusing which Plaintiff assumes was intentional." [Id. at 23].  The Court denies this request because (1) Plaintiff acknowledges he

already has the discovery he seeks to compel via the Claim File, (2) Plaintiff provides no reason that attorney-client privilege does not apply to those documents and communications, (3) nothing before the Court suggests the redactions made by Defendant are improper pursuant to attorney-client privilege, and (4) no reason exists to require Defendant to provide already-produced discovery to Plaintiff in a different format merely because he finds the Claim File difficult to interpret. Accordingly, the Court denies Plaintiff's motion to compel as it concerns the partially redacted portions of Defendant's Claim File.  [Doc. 65].

### 2.     Written discovery not from the Claim File

Plaintiff also seeks to compel various written discovery from Defendant via requests for production and interrogatories.  [See id. at 12–17].  Defendant correctly notes that the Court could deny Plaintiff's motion to compel in these aspects entirely because Plaintiff failed to adhere to Local Rule 37.1, which requires that "[a] motion to compel a disclosure under LR 26.1 or to compel a response to discovery conducted pursuant to the Federal Rules of Civil Procedure shall[] . . . quote verbatim each disclosure, interrogatory, deposition question, request for designation of deponent, or request for inspection to which objection is taken[,]" and "the specific objections" to each.  See LR 37.1(A)(2)–(3), NDGa; [Doc. 70 at 9].  Indeed, in his motion to compel, Plaintiff merely provides a list of his discovery requests—some of which Plaintiff elects to "restate[] and rephrase[]" or "amend[] from the original request"

based on Defendant's previous responses—and paraphrased or modified versions of Defendant's responses that Plaintiff labels as Defendant's "boilerplate objections." [See Doc. 65 at 11–17].

As a preliminary matter, because some of Plaintiff's interrogatories or requests for production have apparently been "amended," "rephrased," or "restated," the Court cannot compel responses to them because it is unclear that Defendant ever refused to respond to those (potentially new) requests in good faith.[17]  [See id.]  Nor is it the Court's responsibility to assist Plaintiff in more carefully crafting his discovery requests.

What is abundantly clear from the Court's review, however, is that Plaintiff has repeatedly and persistently sought written discovery specifically related to Defendant's use of the Protecting Against the Changing Economy index ("PACE index") as it relates to Defendant's determination of the appropriate inflation index during its handling of his Claim.  [See generally id.]  Notably, Defendant failed to produce a copy of the PACE index to Plaintiff until after the instant motion to compel was filed—and after it represented to the Court during the July 13, 2023 hearing that

---

[17] Some of Plaintiff's discovery requests include demands for information regarding Defendant's patents and the names of any of Defendant's attorneys who corresponded with the Georgia Insurance Commissioner in 2017.  [See Doc. 65 at 13–14].  The Court finds these requests to be irrelevant to the issues at hand.  See FED. R. CIV. P. 26(b)(1).  Accordingly, the Court denies Plaintiff's motion to compel as to those requests.

it had no further responsive documents regarding the inflation index.  [See Docs. 70 at 10; 71].

At present, Defendant maintains that the PACE index is only used to calculate inflation as of the date of the loss during the claims process.  [Doc. 70 at 10]. Plaintiff appears to argue that he is still owed discovery responses about how Defendant uses the PACE index in cases where "Defendant took too long to investigate and ultimately pay the claimant."  [Doc. 72 at 10].  The answer to Plaintiff's questions may simply be that Defendant does not apply the PACE index in any manner other than how it already described (to calculate inflation as of the date of the loss when a claim is filed), although it may yet be unclear how that process works.  [Doc. 70 at 10].  However, given Defendant's delay in producing the PACE index to Plaintiff and that document's seeming relevance to Plaintiff's underlying claims, the Court finds it fair to compel Defendant to produce any non-privileged written discovery regarding how the PACE index was applied and used in evaluating Plaintiff's Claim as well as Defendant's standard operating procedures regarding use of the PACE index.[18]  See Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (explaining that "a district court is allowed 'a range of

---

[18] If Defendant feels it possesses a legally supported objection to producing the above discovery, it should (1) meet and confer with Plaintiff in good faith to resolve the objection and (2) follow the undersigned's procedures for a discovery dispute as set forth in the Instructions for Civil Cases, with which the Court expects *both* Parties to be extremely familiar by this point.  [Doc. 4].  Should a protective order for that discovery become necessary, the Court expects that the Parties be capable of presenting that type of routine filing to the Court for consideration.

choice' in" deciding motions to compel such that the Eleventh Circuit "will not second-guess the district court's actions unless they reflect a 'clear error of judgment.'" (quoting United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989)); see also FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.").  Therefore, the Court grants Plaintiff's motion to compel in this respect and sets forth a deadline for this written discovery to be provided to Plaintiff in the conclusion of this order.  [Doc. 65].

3.    Depositions

Finally, Plaintiff asks the Court to compel depositions of no fewer than nine (9) individuals, including defense counsel.  [See id. at 23].  It is undisputed that Defendant did not make *any* individuals available to be deposed by Plaintiff during the discovery period in this case, as was discussed during the July 13, 2023 hearing. [See Docs. 58, 59].  However, at that hearing, Defendant (through its counsel) represented to the Court that it would be amenable to Plaintiff deposing three (3) of

the nine (9) individuals from his list, all of whom are Defendant's employees who

worked on Plaintiff's Claim: Mr. Frank Gatlin, Mr. Jon Hatch, and Mr. Carlos Diaz.

The Court finds that Plaintiff should be afforded the opportunity to depose these

three (3) individuals.  Simultaneously, the Court finds no support for the proposition

that deposing the other six (6) individuals listed (including defense counsel) is

necessary and proportional to the needs of this case.  See FED. R. CIV. P. 26(b)(1).

Accordingly, the Court grants in part and denies in part Plaintiff's motion as to his

requested depositions and sets forth a deadline for these depositions to be completed

in the conclusion of this order.[19]

## IV.    Cross-Motions for Summary Judgment [Docs. 36, 37, 42]

The Court now takes up the Parties' cross-motions for full or partial summary

judgment.  [Docs. 36, 37, 42].  Given the need for further discovery in this case, the

Court finds that it would be inappropriate—at this juncture—to decide the Parties'

---

[19] Here, the Court finds it necessary to note Plaintiff's habit of submitting what he claims to be "transcripts" of various conversations as exhibits to his motions.  Nothing indicates that these purported "transcripts" were created by a professional stenographer—rather, they appear to be created by Plaintiff himself.  The Court cautions Plaintiff that he should not submit self-created "transcripts" of the three (3) depositions he will be allowed to conduct.  The Court strongly encourages the Parties to cooperate in facilitating take-down of these depositions for the sake of the Court's later review, but declines to provide further mandates except to remind the Parties that the depositions must comply with the provisions of Rule 30, in particular, subsection (b)(3).  See FED. R. CIV. P. 30(b)(3).

summary judgment motions.[20]  See supra, part III.D.2–3.  As another district court of this Circuit comprehensively explained:

> The [c]ourt will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).
>
> As Rule 56 implies, district courts should not grant summary judgment until the non-movant "has had an adequate opportunity for discovery." Snook v. Trust Co. of [Ga.] Bank, 859 F.2d 865, 870 (11th Cir. 1988); see also McCallum v. City of Athens, 976 F.2d 649, 650 (11th Cir. 1992) (noting that a party may move for summary judgment only after exchanging "appropriate" discovery); Ross v. Bank South, N.A., 885 F.2d 723, 730 (11th Cir. 1989) ( affirming summary judgment because the non-movant was unable to create any issue of fact after "substantial discovery"), cert. denied, 495 U.S. 905[] (1990).  Indeed, "[t]he whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits." Parrish v. [Bd.] of [Comm'rs] of the [Ala.] State Bar, 533 F.2d 942, 948 (5th Cir. 1976).  Thus, out of fairness to the non-movant, "summary judgment may only be decided upon an adequate record." WSB-TV v. Lee, 842 F.2d 1266, 1269 (11th Cir. 1988).
>
> After a party moves for summary judgment, the non-movant "bears the burden of calling to the district court's attention any outstanding discovery." Cowan v. J.C. Penney Co., 790 F.2d 1529, 1530 (11th Cir. 1986).  Once it is convinced that discovery is inadequate, the district court should deny summary judgment. See, e.g., Elk v. Townson, 839 F. Supp. 1047, 1051 (S.D.N.Y. 1993) (granting summary judgment after "discovery [had] been completed and both parties [had] ample opportunity to uncover facts and evidentiary support for them"); Hall

---

[20] The lone exception is that the Court finds it appropriate to deny as moot Plaintiff's original motion for partial summary judgment in light of his amended motion for partial summary judgment (to which Defendant responded).  [Doc. 37].

v. Sanchez, 708 F. Supp. 922, 923 n. 1 (N.D. Ill. 1989) (denying summary judgment during the "early stages of discovery" and reminding the defendant that he "may present a summary judgment motion . . . at the close of discovery").

Blumel v. Mylander, 919 F. Supp. 423, 428 (M.D. Fla. 1996) (fourth alteration in original).

Here, the Court finds that discovery has thus far been inadequate because certain appropriate discovery never took place. See id.; see also supra, part III.D.2–3.  Thus, the Court reopens discovery for the limited purpose of completing the depositions and written discovery described above and sets forth an amended schedule for further pretrial proceedings in the conclusion of this order.  See supra, part III.D.2–3; see also infra, part V.  Therefore, the Court denies without prejudice the Parties' cross-motions for summary judgment, with leave to re-file at the appropriate juncture.  [See Docs. 36, 42].

Separately, the Court notes that it finds cause for concern regarding both Parties' conduct throughout the course of this litigation.  As to Plaintiff, while the Court is cognizant of the challenges that *pro se* parties may face in litigating cases such as this one, there have been times that Plaintiff has asked the Court to go beyond its proper role of determining this dispute on the merits.  [See, e.g., Doc. 72 at 14] ("Due to a lack of expertise in the relevant terminology, Plaintiff seeks the Court's assistance to ensure that '[h]e will be provided with the entire truth.'" (emphasis and quotation marks in original)).  However, the Court cannot grant unsubstantiated or

unsupported requests by Plaintiff on the lone basis that he lacks expertise and is proceeding in this case *pro se*.  See Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008) (explaining that the leniency with which courts should treat *pro se* filings "does not permit the district court to act as counsel for a party"); Fotse v. Angel Oak Prime Bridge, LLC, Civil Action No. 1:19-CV-05820-ODE-AJB, 2020 WL 9936688, at *4–5 (N.D. Ga. Feb. 27, 2020) ("While a person has the absolute right to represent himself or herself in court (appear '*pro se*'), litigants are strongly encouraged to retain a lawyer who is knowledgeable both in the rules of evidence and procedure employed in this court and with the laws and rules surrounding the subject matter of the litigation.  A party is generally not entitled to extra leeway or consideration just because the party is not represented by a lawyer."  (internal citations and emphasis omitted)).   The Court has provided Plaintiff with considerable leeway throughout the course of this litigation, conducted an in-person hearing regarding several of his motions, and liberally construed his motions and pleadings pursuant to Eleventh Circuit guidance.  Despite the Court's best efforts to limit these proceedings to the relevant questions of fact and law, Plaintiff has continued to make duplicative or "amended" filings replete with arguments the Court has already considered and rejected (often more than once) and has also tendered several documents that wholly fail to conform to this district's

Local Rules or the Federal Rules of Civil Procedure.  The Court cautions Plaintiff that these practices are improper and will not aid the Court's resolution of his claims.

As for Defendant, its own conduct over the course of this action has given the Court pause.  To be clear, no action or failure by *Plaintiff* relieves Defendant of its independent duties to fully participate in discovery, follow the undersigned's Instructions for Civil Cases regarding discovery disputes (as discussed during the July 13, 2023 hearing), adhere to the appropriate legal standards, and support its arguments with relevant caselaw and citations.  The Court cautions Defendant that it should carefully adhere to these duties going forward.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES AS MOOT** Plaintiff's "Motion for Partial Summary Judgment."  [Doc. 37].  The Court **DENIES WITHOUT PREJUDICE**, with leave to refile, Defendant's "Motion for Summary Judgment" [Doc. 36] and Plaintiff's "Amended Motion for Partial Summary Judgment." [Doc. 42].  Next, the Court **DENIES** the following motions filed by Plaintiff:

- "Motion to Strike Defendant's Frivolous Defenses [and for] Permission to File a Motion for Sanctions Under Rule 11 and for a Hearing" [Doc. 62];

- "Motion to Certify for Interlocutory Appeal the Court's July 18, 2023 Order and Stay Proceedings Below" [Doc. 63];

- "Motion to Strike State Farm's Response in Opposition to Plaintiff's Motion to Compel" [Doc. 72];

- "Motion to Recuse Judge Eleanor Ross Due to the Defendant and Their Attorneys' Deception and Fraud Upon the Court which has Defiled the Court's Impartiality" [Doc. 73]; and

- "Motion to Investigate Fraud on this Court Under Rule 60 and for Violations of Rule 11, Rule 26, and Rule 37 to Set Aside Its Rulings and for a Hearing Under Rules of Evidence." [Doc. 74].

Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's "Motion to Compel State Farm's Production of Documents, Interrogatories, Provide Witnesses for Depositions, and Full Disclosure Regarding Redacted and So-Called Privileged Documents and Emails." [Doc. 65]. Specifically, the Court **GRANTS** Plaintiff's requests that this Court: (1) compel the depositions of Mr. Frank Gatlin, Mr. Jon Hatch, and Mr. Carlos Diaz; and (2) compel Defendant to produce any non-privileged responsive documents regarding how the PACE index was applied and used in evaluating Plaintiff's Claim as well as Defendant's standard operating procedures regarding use of the PACE index. The Court **DENIES** Plaintiff's motion to compel in all other respects.

The Court **REOPENS** discovery in this action. The Court **ORDERS** that Defendant shall have thirty (30) days from the date of this order to produce the above-specified written discovery to Plaintiff. After this initial thirty (30)-day period ends, the Court **ORDERS** that the Parties shall have forty-five (45) days to complete the depositions of Mr. Frank Gatlin, Mr. Jon Hatch, and Mr. Carlos Diaz. The Court strongly encourages the Parties to be proactive in scheduling and

arranging these depositions as soon as possible.  The Court lastly **ORDERS** that the

Parties shall have thirty (30) days from the end of the reopened discovery period to

submit any motions for summary judgment, or alternatively, their Local Rule 16.4

joint proposed consolidated pretrial order ("CPTO").  <u>See</u> LR 16.4, NDGa.  The

Court provides a table reflecting this amended schedule below:

| Task | Deadline |
|---|---|
| Defendant to produce the above-specified written discovery to Plaintiff | Thirty (30) days from the date of this order |
| Depositions of Mr. Frank Gatlin, Mr. Jon Hatch, and Mr. Carlos Diaz to be completed | Forty-five (45) days from the deadline for Defendant to produce written discovery |
| Any motion(s) for summary judgment due, or, alternatively, the Parties' Local Rule 16.4 proposed CPTO due | Thirty (30) days from the deadline for completion of depositions |

Either Party's failure to comply with the provisions of this order may result in

sanctions without further notice.  <u>See</u> LR 16.5, NDGa.

**SO ORDERED**, this 15th day of February, 2024.

Eleanor L. Ross
United States District Judge
Northern District of Georgia